69 S.E.2d 139 (1951)
DARLING
v.
BALTIMORE & O. R. CO. et al.
No. 10346.
Supreme Court of Appeals of West Virginia.
Submitted September 26, 1951.
Decided November 13, 1951.
Dissenting Opinion December 11, 1951.
Petition for Rehearing Refused February 18, 1952.
*142 George S. Wallace, George S. Wallace, Jr., Huntington, for plaintiffs in error.
Jess Hammock, Huntington, M. J. Ferguson, Wayne, Lilly & Lilly and R. G. Lilly, all of Charleston, for defendant in error. *140
*141 RILEY, Judge.
James Leon Darling, Sr., administrator of the estate of James Leon Darling, Jr., instituted in the Circuit Court of Wayne County this action of trespass on the case against The Baltimore and Ohio Railroad Company, Samuel I. Stephens, its engineer, and Hughie D. Bee, its fireman, to recover damages for the alleged wrongful death of plaintiff's decedent, caused by a collision between defendant railroad company's passenger train No. 78, operated by the defendant Stephens, as engineer, and the defendant Bee, as fireman. To a judgment in plaintiff's favor in the amount of ten thousand dollars, based upon a jury verdict, this writ of error is prosecuted.
The declaration contains three counts: The first count alleges the failure of defendants to operate the train at a reasonable, proper, legal and safe rate of speed; the second count alleges the failure to give the proper crossing signals; and the third count alleges the failure to obey an ordinance of the City of Huntington, which required the train to reduce its speed to ten miles an hour before entering the crossing at Third Avenue and Twenty-third Street in the City of Huntington.
After plaintiff had rested his case, fireman Bee moved the court to strike the evidence and direct a verdict in his favor on the ground that there was no evidence connecting him in any way with any act of negligence or omissions of duty which resulted in the collision. This motion being overruled, defendant Bee announced in open court that there would be no further appearance by him in defense of the action; *143 that he would stand on the record; and that when he should be called as a witness it would be as a witness for defendant railroad company and not in his own behalf. At the same time the defendant railroad company and engineer Stephens moved the court to strike the evidence and direct a verdict for them, which motion was likewise overruled.
On the morning of February 23, 1947, at 12:05, the weather being cloudy and cold, but visibility good, defendant railroad company's passenger train No. 78, consisting of its engine No. 1383 and three coaches, which was being operated by the individual defendants, was moving south (east by railroad direction) on The Baltimore and Ohio Railroad Company's tracks from Huntington to Parkersburg, when, at its Twenty-third Street and Third Avenue crossing, in the City of Huntington, it collided with an automobile driven by Vilias H. (Tom) Ward, in which plaintiff's decedent was riding in the rear seat.
The defendants offered in evidence as "Defendants' Exhibit No. 1", a map entitled "Layout of Intersection of 3 Avenue & 23 Street, Huntington, W. Va.," made from an actual survey and drawn to a scale of one inch equals twenty feet, and five photographs, filed as "Defendants' Exhibits Nos. 2, 3, 4, 5, and 6," all taken in the center of Third Avenue.
The defendant railroad company's tracks, before they reach the said crossing, as they travel in the direction of Parkersburg, curve to the right. To the east the tracks of The Chesapeake and Ohio Railway Company at the crossing parallel defendant railroad company's tracks, there being a distance of forty-three feet between the center lines of the two railroad companies' tracks. The portion of Third Avenue lying directly to the east of the crossing from curb to curb has a width of 65.3 feet. Between the two lines of tracks and at an equal distance between them and slightly to the north of the northerly property line of Third Avenue, as extended across the crossing, there was a watchman's shanty, maintained by the defendant railroad company for the purpose of serving both crossings. The shanty was six feet, three inches by eight feet and was approximately ten feet high. Paralleling The Chesapeake and Ohio Railway Company's tracks on the east and running almost to the northerly property line of Third Avenue is a large building occupied by the American Car and Foundry Company.
At the time of the collision there was a solid wooden fence with a height of approximately eight feet, separating the property of American Car and Foundry Company from Third Avenue, the fence being directly along the northerly property line of Third Avenue. To the south of Third Avenue at the crossing and a short distance East of the Chesapeake and Ohio tracks, there was the "Spur Filling Station", which is laid out in a semi-circle with a curb, and upon which there was a flood light burning at the time of the collision, located 65.3 feet south of the northerly curb of Third Avenue. At the westerly end of the semi-circle of the filling station, a short distance east of the easterly rail of the Chesapeake and Ohio tracks, there was another flood light; and there was still another flood light at the easterly end of the filling station semi-circle. There were six other lights between the southerly curb line and the filling station building, substantially in the center of the semi-circle. In addition to these lights there were three signboard lights, slightly east of the filling station building; two signboard lights slightly west of the filling station building; and a street light overhead in the middle of Third Avenue, a short distance east of The Chesapeake and Ohio Railway Company's tracks. At the time of the collision all these lights were burning.
Approximately 161.7 feet to the east of the center line of defendant railroad company's tracks near the northern curb line of Third Avenue there was a conventional reflectorized sign with the large letters "RR" separated by two cross marks. North of the northerly curb of Third Avenue and 59.5 feet east of the center line of defendant railroad company's tracks there was a wooden railroad crossing sign, which from the photographs seems to consist of a wooden post near the top of which *144 there were cross-pieces of wood on the wooden base, one of which cross-pieces bears the legend "Railroad" and the other "Crossing"; and on the wooden base appear the words "Look Out For Locomotive." For a considerable distance from the ground, this post is painted in diagonal black and white stripes, which appear prominently from an examination of the photographs introduced in evidence as "Defendants' Exhibits Nos. 4, 5, and 6." At the crossing Third Avenue runs in a straight line approximately at right angles to defendant railroad company's tracks, and at least for a considerable distance east and west of the crossing, as well as on the crossing itself, the travelled portion is smooth and level.
Defendants' witness, Allen T. Blount, a civil engineer employed by defendant railroad company, who made the map filed as "Defendants' Exhibit No. 1", and the survey from which said map was prepared, testified that from a point marked on the map by the symbol "one" 142 feet east of defendant railroad company's tracks, the line of vision of a person standing in the center of Third Avenue intersects defendant railroad company's tracks in a northerly direction at 80 feet; that at the point marked "two" on the map, 108 feet east of said tracks, the line of vision intersects the tracks at 105 feet; that at the point marked "three" on said map, 93 feet east of said tracks, the line of vision intersects said tracks at 137 feet; and that at the point marked "four" on said map, 79 feet east of said tracks, the line of vision intersects said tracks at 490 feet. The various points where the witness' line of vision intersect the defendant railroad company's tracks from the points indicated in the center of Third Avenue are all north of the crossing and in the direction from which the train was coming at the time of the collision.
The photographs introduced in evidence as "Defendants' Exhibits Nos. 2, 3, 4, 5, and 6" were taken by defendant railroad company's witness and claim agent, C. T. Kreiter, at various points in the center of Third Avenue, east of said tracks. This witness testified that "Defendants' Exhibit No. 2 was taken 140 feet east of said tracks; that "Defendants' Exhibit No. 3" was taken 106 feet east of said tracks; that "Defendants' Exhibit No. 4", was taken 91 feet east of said tracks; and that "Defendants' Exhibit No. 5" was taken 77 feet east of said tracks; and, further, that at the time the photographs were taken witness could see from the points at 140 feet, 106 feet, 91 feet, and 77 feet defendant railroad company's railroad tracks in a northerly direction from Third Avenue, respectively: 77 feet, 98 feet, 665 feet and 709 feet.
The foregoing facts are portrayed by the record in this case without contradiction.
On the evening of February 22, 1947, plaintiff's witness, Vilias H. (Tom) Ward, the driver of the automobile involved in the collision herein occurring early the next morning, accompanied by plaintiff's witness Herbert Cade, and the decedent, James Leon Darling, Jr., left Purdue Store on Big Creek in Wayne County, and drove to the City of Huntington, where, on Seventh Avenue, near Ninth Street, they picked up James Hazelett, who at the time of the trial was in the Navy and did not testify. They then drove in a northerly direction on Twenty-fourth Street to a friend's house on Second Avenue, which was in the rear of a beer garden, to see a friend. Not finding him there, Ward then drove his car south on Twenty-fourth Street to the intersection of Twenty-fourth Street and Third Avenue. Sitting next to the driver in the front seat was Hazelett. Decedent and Cade were in the rear seat, the former being on the left side of the car directly behind the driver. At the intersection of Twenty-fourth Street and Third Avenue, Ward stopped the automobile, and then drove it to the right and proceeded in a westerly direction on Third Avenue. Ward and Cade both testified that as they drove along Third Avenue, in their proper lane, midway between the center line of Third Avenue and the northerly curb thereof, they were preceded by a tractor-trailer about twenty-five to thirty feet, which crossed the crossing about the same time Ward was proceeding to go across.
*145 Cade testified that there were some automobiles moving east on Third Avenue, that is in the opposite direction from which the Ward car was travelling, which passed over the crossing, but that he did not see any of those automobiles stop for the crossing; that he did not see the train, because he was rendered unconscious by the collision and did not regain consciousness until he found himself at St. Marys Hospital in Huntington.
Ward testified that his automobile was moving west midway between the center of Third Avenue and the northerly curb thereof, as he approached the crossing behind the trailer-tractor, which continued over the crossing about the time the Ward car was proceeding to cross. The impact of the collision occurred between the right front of the Ward car and the left front of the locomotive.
After engineer Stephens felt the impact of the collision, he made a service application of his brakes, and the train then ran three car lengths or two hundred ten feet over the crossing; and when the locomotive reached the southerly end of the crossing the fireman told the engineer to stop the locomotive, advising him of the collision between the automobile and the locomotive, whereupon Stephens made an emergency application of the brakes, and the train then ran about one hundred fifty feet, which Stephens testified was "a good stop". However, before the train came to a stop it had dragged the Ward car to the south of Third Avenue, finally coming to a stop on a bank lying east of the defendant railroad company's tracks, between the Chesapeake and Ohio and the Baltimore and Ohio tracks, just opposite the rear door of the last coach of defendant railroad company's train.
At the time of the collision defendants' witnesses, Hansel McClure and Worthy Mathews, were standing in the center of the semi-circle of the filling station on the south side of Third Avenue, McClure standing in the doorway of the building and Mathews standing just outside the door. As Mathews saw a collision between Ward's automobile and the locomotive was about to occur, he handed McClure a nickel to call the Huntington Police Department, and he testified that the collision occurred while the telephone was "ringing", and just before it was answered. These witnesses testified that they saw no trailer-tractor preceding the Ward automobile, and that no cars crossed the crossing from the other side of the tracks in an easterly direction as the Ward car approached the crossing. Defendants' witness, Walter Miller, who was walking toward the crossing on the south side thereof and between the defendant railroad company's tracks and the filling station, testified to the same effect as to the trailer-tractor and the other cars.
For the better organization of this opinion, and, if possible, to simplify the marshaling of the facts, those which have relation to the first and third counts of the declaration will be discussed in the first instance.
The first count alleges the failure of defendants to operate the locomotive at a reasonable, proper, legal and safe rate of speed, and the third count alleges the failure of defendant railroad company and its engineer and fireman to obey the ordinance of the City of Huntington, which requires all trains to reduce their speed to ten miles an hour before entering any crossing on Third Avenue.
Our discussion will then be confined to the facts bearing on the second count, which alleges the failure of defendants to give the proper warning signals.
Initially, our attention will be directed to the question whether defendant railroad company and its two employees are guilty of primary negligence. If the showing presented by this record on the question of primary negligence is sufficient for jury determination, the verdict of the jury and the judgment will stand, unless the defendants are guilty, as a matter of law, of contributory negligence, or other reversible error appears in the case.
On the question whether the instant verdict should be set aside on this writ of error on the ground that plaintiff has not shown primary negligence, or that plaintiff is barred as the result of his own contributory negligence, we should apply *146 the rule governing the direction of verdicts, which prevails in this jurisdiction: Before directing a verdict in favor of a party to a law action, every reasonable and legitimate inference favorable to the prevailing party, fairly arising from the evidence, considered as a whole, should be entertained by the trial court, and those facts should be assumed as true, which the jury may properly find under the evidence. Fielder v. Service Cab Co., 122 W.Va. 522, 11 S.E.2d 115, and Boyce v. Black, 123 W.Va. 234, 15 S.E.2d 588.
The declaration alleges, and the proof establishes an ordinance of the City of Huntington, which provides, in part: "The speed of railroad trains or locomotives within the limits of the city shall be limited as follows: All trains * * * at crossings on Third Avenue in said City, shall be limited to, and run at, a speed of not exceeding ten miles per hour for passenger trains, * * *."
Witnesses for the defendants testified variously as to the speed of the oncoming train as it approached and entered the Third Avenue crossing. Engineer Stephens and fireman Bee testified that the train was travelling at a speed of fifteen miles an hour, and conductor Riggs estimated the speed from fifteen to twenty miles an hour, the engineer basing his testimony on the indicator located on his side of the cab of the locomotive. A stipulation in the record is to the effect that, if the speed tape had been produced, it would have shown a speed of twenty miles an hour. So, in any event, it appears that the locomotive was being operated at a speed from five to ten miles an hour in excess of the speed limit prescribed by the city ordinance.
In Skaff v. Dodd, 130 W.Va. 540, pt. 3 syl., 44 S.E.2d 621, 622, it was held: "Disregard of the requirements of a traffic statute or ordinance is prima facie actionable negligence when it is the natural and proximate cause of the injury, and where in an action for personal injuries the evidence conflicts on the question of proximate cause, such question is one of fact for the jury." See also Moore v. Skyline Cab Co., Inc., W.Va. pt. 1 syl., 59 S.E.2d 437; and Snyder v. Baltimore & Ohio Railroad Co., W.Va. pt. 1 syl., 65 S.E.2d 74.
That the defendant railroad company's locomotive was travelling at a speed, as it approached and entered the crossing, in violation of the ordinance of the City of Huntington is established in this record as a matter of law; but such excessive speed will constitute actionable negligence only if it is the proximate cause of the collision. Whether such violation was in this case the proximate cause of decedent's death is a jury question. Snyder v. Baltimore & Ohio Railroad Co., supra, 65 S.E.2d at page 76; and Jones v. Virginian Railway Co., 115 W.Va. 665, 177 S.E. 621, 626. In the Jones case, which is followed on the immediate point in the Snyder case, this Court cited and quoted from the opinion in Grand Trunk Railway Co. v. Ives, 144 U.S. 408, 418, 12 S.Ct. 679, 683, 36 L.Ed. 485, which reads: "`But perhaps the better and more generally accepted rule is that such an act on the part of the railroad company is always to be considered by the jury as at least a circumstance from which negligence may be inferred in determining whether the company was or was not guilty of negligence.' While the court here speaks of negligence, it seems clear that, under the West Virginia rule, the same reasoning would have to be applied to the question of proximate cause, arriving at the conclusion that its existence, being an element of actionable negligence,' would, in such case, be a jury question. We therefore are of opinion that, in so far as the prima facie showing of the defendant's negligence is concerned, the plaintiff had introduced sufficient proof to go to the jury." In the instant case we are of opinion that it was within the province of the jury to determine, without regard to the ordinance, whether the speed of the locomotive, as shown by this evidence, sustained the allegations of the first count of the declaration that the defendants failed to operate the train "at a reasonable, proper, legal and safe rate of speed as the same approached and entered upon" the Third Avenue and Twenty-third Street crossing, and whether such failure was the proximate cause of decedent's fatal injuries.
*147 On the question whether defendant railroad company and its employees, as the locomotive approached the crossing, gave proper warning signals, and whether the headlight was burning, witnesses for both plaintiff and defendants testified variously.
Ward and Cade testified that the bell was not rung, nor the whistle sounded, and that they did not see the headlight on the locomotive. Hansel McClure, who was standing in the doorway of the filling station at the time of the collision, testified that he heard the whistle blow before the locomotive reached the Third Avenue and Twenty-third Street crossing, and saw the reflection of the locomotive's headlight; and that the whistle was blown three times after the locomotive left Twenty-second Street, which was approximately six hundred feet to the north of said Third Avenue crossing in a diagonal direction, as determined by the use of a straight rule on defendants' Exhibit No. 1. He further testified that the last whistle was blown when the locomotive was about five feet from the watchman's shanty, or about fifteen feet from the crossing. Defendants' witness, Worthy Mathews, while standing near McClure at the filling station, heard the locomotive whistle for the Twenty-second Street crossing, and twice thereafter, the last time being just as it came on the crossing. He stated he heard the bell ring and saw the headlight of the locomotive burning brightly. Defendants' witness Walter Miller, testified that when he heard the locomotive whistle, he stopped at the crossing to let the train pass; that the whistle was sounded two or three times, the first blast being for the Twenty-second Street crossing and the last as the locomotive was entering the Third Avenue and Twenty-third Street crossing. He also testified that he heard the bell ringing, and about that time he saw the headlights of the Ward car about fifty yards away.
Engineer Stephens testified that the locomotive was equipped with an automatic bell, which was rung all the way from the Huntington depot, a mile away, to the Third Avenue and Twenty-Third Street crossing; that the headlight was equipped with a 150-watt bulb, which was burning brightly; that he blew the whistle for the Twenty-second Street crossing, which crossing he estimated was six or seven hundred feet away; that under the rules of the railroad company it was his sole duty to blow the whistle and ring the bell, as these signals can be operated only on the engineer's side of the locomotive; but because of the boiler of the locomotive he did not see Ward's car until after the collision.
Fireman Bee testified that the whistle was blown sixty to eighty feet from the crossing and that prior thereto it had been blown for the Twenty-second Street crossing.
Ward and Cade having testified specifically that the whistle was not blown and the bell was not rung, a conflict in the evidence is presented on the immediate issue, which under the ruling in the cases of Fielder v. Service Cab Co., supra, and Boyce v. Black, supra, requires us to hold that the jury had a right to believe that those two signals were not given; and, further, in our opinion, the jury had a right to believe that if they had been given, the warnings would have been sufficient to deter Ward from driving his car on the crossing. To state the issue a little differently: it was within the province of the jury to find that these warnings were not given; and that defendants' failure in that regard was a proximate cause of the collision. As to the headlight, however, Ward and Cade having testified simply that they did not see it shining, while some of defendants' witnesses testified affirmatively that the headlight was burning brightly, there is no conflict in the evidence in that regard. The fact that plaintiff's witnesses did not see the headlight and that defendants' witnesses testified affirmatively that it was burning brightly does not create a conflict in the evidence in that regard. In Cavendish v. Chesapeake & O. R. Co., 95 W.Va. 490, 121 S.E. 498, this Court held: "The fact that witnesses have heard signals given by a locomotive approaching a crossing, warning travelers of danger, is not necessarily in conflict with the evidence of other witnesses who did not hear them; for the observation of the fact by those who heard is *148 consistent with the failure of the others to hear them." We therefore hold, as this Court did in the case of Snyder v. Baltimore & Ohio Railroad Co., supra, that, as a matter of law, there was no negligence on the part of defendants concerning the headlight.
From the foregoing it appears that plaintiff was entitled to have the case go to the jury on all three counts of his declaration, and the jury having found for plaintiff on substantial evidence in the latter's favor, we cannot set aside the verdict of the jury on the ground that the defendants were not guilty of primary negligence. So, the verdict must stand unless, as heretofore indicated, plaintiff's decedent was guilty of contributory negligence.
As plaintiff's decedent was a mere passenger, seated in the back of the Ward automobile, directly behind the driver, though Ward was guilty of negligence which proximately contributed to the collision, such negligence cannot be imputed to plaintiff's decedent. Gilkerson v. Baltimore & Ohio Railroad Co., 129 W.Va. 649, 41 S.E.2d 188; Parsons v. New York Central Railway Co., 127 W.Va. 619, 34 S.E.2d 334; Jameson v. Norfolk & Western Railway Co., 97 W.Va. 119, 124 S.E. 491. In points 7 and 8 of the syllabus to the Parsons case [127 W.Va. 619, 34 S.E.2d 336], this Court held:
"7. In the absence of a joint enterprise, the negligence of the driver of a motor vehicle attempting to cross a public railroad crossing cannot be imputed to a passenger in the vehicle.
"8. The driver and a passenger of a motor vehicle are not engaged in a joint enterprise where the passenger has no voice in directing and governing the movements of the vehicle."
Nevertheless, plaintiff's decedent was under a duty to exercise due care for his own safety. Jackson v. Chesapeake & Ohio Railway Co., 110 W.Va. 568, 159 S.E. 517; Gilkerson v. Baltimore & Ohio Railroad Co., supra.
On the question whether plaintiff's decedent was guilty of contributory negligence there are several factors to be considered: (1) The speed of the Ward automobile as it was driven in a westerly direction toward and on the crossing; (2) whether plaintiff's decedent and the driver Ward were familiar with the Third Avenue and Twenty-third Street crossing and its attendant dangers; (3) whether the watchman Napier was in a proper place on the crossing at the time the train and Ward's car were approaching it, and was then and there giving effective signals; and (4) if, in the circumstances of this case, as the automobile approached the crossing, plaintiff's decedent was cognizant of or by the exercise of reasonable care should have been cognizant of his peril in time to have effectively warned Ward, did he do so?
We shall at this point discuss the evidence bearing on these factors seriatim.
The testimony of plaintiff's and defendants' witnesses on the question of the speed of the Ward automobile, as it was proceeding west along Third Avenue to and on the crossing, is decidedly variant. Ward and Cade testified that the automobile was being driven, as it approached the crossing, at an estimated speed of twenty to twenty-five miles an hour, and Ward said he kept moving at approximately that speed until the collision. He did, however, testify that he slowed down for the crossing. In a written statement given to C. T. Kreiter, defendant railroad company's claim agent, Ward said that "While moving west by compass on Third Ave., I reached a speed of approximately twenty-five to thirty miles per hour, regular city driving speed, and kept on moving at that approximate speed until the time of the accident"; and in a statement given by Cade to the same person, he stated that, "I would say our speed at the time of the accident was approximately 30 to 40 miles per hour."
Defendants' witness, Hansel McClure, testified that the Ward car, when he saw it a hundred to two hundred feet away from his position in the doorway of the filling station, was travelling at an estimated speed of forty-five to fifty miles an hour. Defendants' witness, Worthy Mathews, testified that just as the train entered the *149 crossing, he saw the Ward automobile about one hundred or one hundred fifty feet away from the crossing, moving west at an estimated speed of forty to fifty miles an hour.
Defendants' witness, Walter Miller, testified that he walked past the filling station toward the crossing; that he heard the train whistle blow "two or three times"; and that he stopped close to defendant railroad company's tracks as the locomotive gave its last whistle before entering the crossing and at that time saw the lights of the Ward automobile about fifty yards away. If this statement is true, it would indicate that the Ward automobile, as it approached the crossing, was going at a high rate of speed; otherwise the front of the locomotive and the front of the car would not have collided.
Fireman Bee testified that he saw the headlights of the Ward automobile about twenty feet from the crossing, and that it was travelling at a speed of approximately forty miles an hour. Defendants' witness, Nathan Napier, the watchman at the crossing, testified that he was in the center of the crossing just before the collision occurred and left that position in order to preserve his own safety just before the impact between the train and the automobile. This witness testified that he saw the Ward automobile about halfway between Twenty-third and Twenty-fourth Streets on the right of Third Avenue, about halfway between the center and the right side of the Avenue coming at a speed of "not less than forty"; and that he kept his eyes "pretty well on the car" and that he "couldn't tell that the speed changed any from the time I first particularly noticed him until he hit the train."
So the evidence bearing on the speed of the Ward automobile is in decided conflict, but because the verdict and judgment were in plaintiff's favor, we must resolve that conflict, under our ruling in the Fielder v. Service Cab Co., supra, and Boyce v. Black, supra, cases in plaintiff's favor, and, so doing, we say that the jury had a right to find that the Ward car was travelling at a speed of twenty miles an hour as it approached the crossing.
Without substantial contradiction, the evidence in this record fully establishes that as the train and the Ward automobile approached the crossing, defendant railroad company's watchman was in his proper place in the center of the crossing between the tracks of defendant railroad company and the Chesapeake and Ohio Railway, with a red and a green lantern and a shrill whistle, signalling and warning oncoming vehicular and pedestrian traffic, including the Ward automobile and its occupants, of the approach of the train. Engineer Stephens testified that as the locomotive came into the curve four or five hundred feet to the north of the crossing, he saw the watchman "out on the avenue on the left side of the train" with green and red lanterns, both lighted, holding a green lantern on the side next to this witness, and on the other side the watchman "was swinging his red lantern across the street." Fireman Bee testified that he saw the watchman standing in the center of Third Avenue at the crossing, facing west, at a place between the tracks of defendant railroad company and the Chesapeake and Ohio Railway Company's tracks, in a position nearer the tracks of the former, with "a red lantern in his left hand and a green or yellow lantern in his right", waving the green lantern and "holding the red lantern out on the opposite side of the approaching traffic." Defendants' witness, Walter Miller, testified that he saw the watchman about the time he heard the train whistle the last time "About centerways of the street"; that "he was flagging it [the red lantern] in the air"; and that at the same time he heard the watchman's whistle blow. Defendants' witness Mathews testified that when the train was about halfway between Twenty-second and Twenty-third Streets, he saw the watchman at the crossing, waving a red lantern in one hand and holding a green lantern still in the other, and heard the watchman blow his whistle. Defendants' witness McClure testified that before the accident, he saw the watchman in the middle of the street with a red lantern in one hand and a green one *150 in the other, and a whistle in his mouth, which he was blowing; that he was swinging the red lantern back and forth; and that at that time the Ward automobile was about a hundred feet from the watchman, when witness saw the watchman and the automobile, and the train was "just beyond the watch tower." Defendants' witness, Nathan Napier, the watchman at the crossing at the time of the collision, testified that he was employed by both The Baltimore and Ohio Railroad Company and The Chesapeake and Ohio Railway Company; that he heard the defendant railroad company's locomotive whistle for the Twentieth Street crossing; that he took a position near the center of Third Avenue "and something like the center between the C & O and B & O tracks", and began signalling oncoming traffic by swinging his red lantern "and blowing the shrill whistle", when the headlights of the locomotive shone at the Twenty-second Street crossing, which, as heretofore stated, was about six hundred feet away.
Plaintiff's evidence being silent as to the presence of the watchman, plaintiff's witnesses not having been inquired of as to this, and the defendants having produced substantial evidence establishing the presence of the watchman at or near the center of the crossing between the tracks of the two railroad companies, signalling with his red and green lanterns and blowing his whistle in warning to vehicles and persons approaching the crossing on Third Avenue, we must say that under the ruling in Snyder v. Baltimore & Ohio Railroad Co., supra, that, as a matter of law, the watchman was in the center of the crossing properly equipped with his warning signals, and effectively performing his duties, when the Ward automobile was approaching the crossing at Third Avenue and Twenty-third Street. The slight variance in defendants' evidence as to the direction in which the watchman was facing, as the Ward automobile approached the crossing, and the manner in which he was holding or using his lanterns, is immaterial, and does not present a conflict in the evidence.
That plaintiff's decedent was, or by the exercise of reasonable care should have been, cognizant of the Third Avenue and Twenty-third Street crossing appears clearly from this record. Plaintiff's witness Cade testified, without objection, that he and decedent, as the Ward automobile was proceeding westerly on Third Avenue toward the crossing, knew they were approaching the crossing, and that is why both looked to the left and right when the Ward car was at a point about one hundred fifty feet west (east) of the crossing. In any event the warning signals, consisting of the wooden railroad crossing signal and the reflectorized railroad signal, along the northerly curb of Third Avenue, together with the presence of the watchman in the center of the crossing, effectively giving signals with his red and green lanterns, created such a state of circumstances that all the occupants of the Ward car, including plaintiff's decedent, by the exercise of reasonable care should have known they were approaching a crossing and the perils which attend every railroad crossing.
Under the ruling in the cases of Parsons v. New York Central Railway Co., supra, and Gilkerson v. Baltimore & Ohio Railroad Co., supra, that before plaintiff's decedent can be barred from recovery in this action on the ground that he was guilty of contributory negligence, which proximately contributed to the collision between the Ward automobile and defendant railroad company's locomotive, it must appear that decedent was, or by the exercise of due care could have been, cognizant of the impending peril in time effectively to have warned Ward, thus averting the collision, and did not.
Engineer Stephens testified that he saw the watchman in the center of the crossing, using his proper signals, when the locomotive came within four or five hundred feet of the crossing. If the watchman was within full view of the engineer when the locomotive was four hundred feet away, he was equally within the view of decedent, if he had been looking, when the Ward car turned to the right on Twenty-fourth Street *151 at its intersection with Third Avenue, which was about four hundred feet from the crossing, that being the length of a block in the City of Huntington at that place. So both the occupants of the Ward car and defendant railroad company's engineer had equal opportunity to observe the watchman in his proper place in the center of the crossing. The engineer looked and saw the watchman; and the decedent and the other occupants of the Ward car could have looked, but evidently did not, as plaintiff's witnesses were not inquired of as to the presence of the watchman on the crossing.
In addition to decedent's opportunity to observe the watchman giving his warning signals at the crossing, when the Ward automobile was four hundred feet away, there is other substantial evidence in this record which establishes, without contradiction, that decedent, had he looked and observed, could have seen and realized the danger in which the Ward car was being driven in time to have warned Ward, so that the latter could have averted the collision.
That Darling and Cade looked to the right and left when the Ward automobile was one hundred fifty feet from the crossing, and did not look thereafter, is controlling on the question of decedent's contributory negligence. In this jurisdiction one who is proceeding to cross a railroad crossing must not only look, but must look effectively. Robertson v. Monongahela Power & Railway Co., 99 W.Va. 356, 128 S.E. 829; Gray v. Norfolk & Western Railway Company, 99 W.Va. 575, 130 S.E. 139. At the point where Cade testified that both he and decedent looked, their view of defendant railroad company's tracks to the north of Third Avenue was greatly obstructed by the building and fence of American Car and Foundry Company. By using a straight edge on defendants' Exhibit No. 1, and measuring along the center of the right lane of Third Avenue in an easterly direction one hundred fifty feet, along which Ward testified that his automobile was being driven, it can be readily seen that if decedent had looked at a point one hundred fifty feet from the crossing, he could not have seen defendant railroad company's locomotive, unless it was within approximately forty feet of the crossing.
On the question of defendants' primary negligence the rule in the Fielder and Boyce cases has hereinbefore been applied, and the evidence most favorable to plaintiff as to the relative speed of the locomotive and the automobile, as they approached the crossing, has been taken as true, resulting in the assumption that both were travelling at a speed of twenty miles an hour. So, for the purpose of consistency, the same relative speed of twenty miles an hour must be assumed in determining the question of the contributory negligence of plaintiff's decedent. It follows that at the time plaintiff's decedent looked to the right and left at a point one hundred fifty feet from the crossing, defendant railroad company's locomotive was not within forty feet north of the crossing, but one hundred fifty feet away; otherwise the collision would not have occurred. But if plaintiff's decedent had looked when the Ward automobile was at points in the center line of Third Avenue ninety-three feet and seventy-nine feet from the crossing, he could have seen defendant railroad company's locomotive at the respective distances of one hundred five feet and four hundred ninety-five feet north of the crossing, which respective distances would have given plaintiff's decedent ample time within which to have warned Ward, so that the latter could have averted the collision.
But counsel for plaintiff contend that the Ward automobile was being driven halfway between the northerly curb of Third Avenue and the center thereof, as it approached the crossing, and, therefore, that the testimony of Blount, a civil engineer of defendant railroad company, and its claim agent Kreiter as to the lines of vision of the railroad tracks north of the crossing at the various points testified to by them is inaccurate. This position to some extent is sound. However, by using a straight rule on Blount's map, the accuracy of which remains unimpeached in *152 this record, and assuming, as Ward testified, that the Ward car approached the crossing, halfway between the center of Third Avenue and the northerly curb thereof, the occupants of the automobile, including plaintiff's decedent, if they had looked when the automobile was seventy-nine feet east of defendant railroad company's tracks, could have seen the oncoming locomotive when it was one hundred seventy feet or more north of the crossing. Thus, any way we consider this case on the question of decedent's contributory negligence, we are lead to the conclusion that decedent should have realized the impending peril, and that he had ample time to look effectively so that he could have warned Ward of the approach of the locomotive in time for the latter to have stopped his automobile before it was driven on the crossing and in collision with defendant railroad company's locomotive. Decedent's failure in that regard to protect his own safety by looking effectively and thereafter warning Ward of the impending danger constitutes contributory negligence, as a matter of law, barring recovery under the rule prescribed in the Parsons and Gilkerson cases.
Error is assigned to the trial court's action in refusing to direct a verdict for the defendant Bee made at the close of plaintiff's testimony on the ground that the engineer had the sole responsibility to ring the bell and blow the steam whistle on the locomotive. This Court is of opinion that the motion should have been granted, because the appliances for ringing the bell and blowing the whistle were on the engineer's side of the locomotive, and defendant railroad company's rules charged the engineer with the sole responsibility for ringing the bell and blowing the whistle. With this position, however, two members of this Court, the writer and Judge Haymond, do not agree, being, as they are, of opinion that the duty to ring the bell or blow the steam whistle, under Code, 31-2-8, is a nondelegable duty, and that certainly, in the event of the failure of the engineer to perform his duties in that regard, it became the duty of the fireman to do so. In the instant case, as the verdict is in favor of plaintiff, we have heretofore assumed that the bell was not rung or the whistle blown effectively by the engineer. It thereupon became, in the opinion of these two members of the Court, the fireman's duty to assume this responsibility, as Code, 31-2-8, provides that the bell or steam whistle "shall be rung or whistled by the engineer or fireman, at a distance of at least sixty rods from the place where the railroad crosses any public street". (Italics supplied.)
The foregoing disposes of the controlling issues in this case. However, as our decision results in a possible new trial, we deem it advisable to discuss the assignments of error not bearing on the question of liability.
Defendants' second ground of error is that the trial court erred when it denied defendants' motion to withdraw a juror and declare a mistrial on account of the improper argument of plaintiff's counsel in closing the case. During the course of his cross examination of engineer Stephens, Stephens testified that he had not acquainted himself with the ordinance of the City of Huntington introduced in evidence. On the basis of this, one of counsel for plaintiff in the closing argument told the jury that engineer Stephens had not acquainted himself with the ordinance of the City of Huntington, but had disregarded it, and that a man who would do that was not entitled to belief. Said counsel for plaintiff repeated: "I said in my opinion a man who disregarded the law, particularly that portion with which he dealt with every day, is not to be credited seriously when it comes to truth and veracity. The jury will recall that this witness [Stephens] made the statement that he had no knowledge as to the ordinance that applied." The court then instructed the jury to disregard the statement, but, nevertheless, for the third time counsel said: "I repeat that in my opinion a man who disregards the law, particularly that portion with which he dealt with every day, is not to be credited seriously when it comes to truth and veracity." A motion for the withdrawal of a juror and for a mistrial was denied, and such denial is assigned as error.
*153 In our opinion, the remarks of counsel are highly inflammatory, and, even if not so designed, would tend to incite the jury and arouse its prejudice against defendants. The possibility of prejudice was greatly accentuated by the repetition of the remarks by plaintiff's counsel in the face of the court's instruction. In this State it has been held: "This Court will reverse the judgment of a trial court in a case in which, over objection, counsel for the prevailing party is permitted, during the argument to the jury, to make a personal attack on the character of the other party, which is designed to and may prejudice the jury." Peck v. Bez, 129 W.Va. 247, pt. 8 syl., 40 S.E.2d 1, 3. Perhaps counsel for plaintiff, in persisting, in spite of the admonition of the court, to make the same remarks, was carried away by his zeal in the interest of his client, but that of itself does not justify his conduct in this regard. Counsel's repeated remarks may have prejudiced the jury, so, as we view the matter, the trial court should have granted defendants' motion for a mistrial.
Under the third ground of error it is asserted that the court erred in permitting plaintiff's witness Ward to testify that on occasions other than the day of the accident, he had seen a watchman at the crossing, when there were no allegations in the declaration that justified this question or answer. As this testimony was in defendants' favor, such testimony was not prejudicial. It is further contended, under this ground, that the court erred when it refused to permit defendant railroad company's claim agent Kreiter to testify concerning what Cade's father said about the accuracy of the statement, which had been written for Cade, and the reason why that statement had not been submitted for signature. The statement having been admitted in evidence, the testimony refused of admission, is, in our opinion, immaterial.
Under the fifth ground of error it is asserted that the court erred when it gave plaintiff's instructions Nos. 5, 6, and 7. There is no error in plaintiff's instruction No. 5, which simply told the jury that plaintiff's decedent had the right to assume that the railroad company's train would be operated in a reasonable and proper manner. Nor is there any error in the giving of plaintiff's instruction No. 6, which informed the jury that actionable negligence means the failure to use such care and caution as a reasonable prudent person would ordinarily have used in the conduct of his affairs in the circumstances of the case. But, in our opinion, plaintiff's instruction No. 7 was clearly erroneous. True, this Court affirmed the action of the trial court in the giving of a like instruction in the recent case of Arrowood v. Norfolk & Western Railway Co., 127 W.Va. 310, 32 S.E.2d 634. In the Arrowood case it was held that, inasmuch as decedent stopped his vehicle before he attempted to pass over defendant's railway tracks, there being no evidence to the contrary, it was presumed that decedent looked and listened, as he was required to do in order to avert the fatal accident. However, that case is to be distinguished from the instant case in that in the latter the alleged contributory negligence of plaintiff's decedent was affirmatively shown by cogent evidence, so that the presumption applied in the Arrowood case should not be applied here, and the action of the court in giving plaintiff's instruction No. 7 was prejudicial error.
Under the sixth ground it is asserted that the trial court erred in refusing defendants' instructions Nos. 1, 2, 5, 6, 9, 11, 13 and 15, and, as modified, in giving defendants' instructions Nos. 9 and 13.
Defendants' instruction No. 1 directed the jury to find for the defendant, Hughie D. Bee. Defendants' instruction No. 2 directed the jury to find for the defendants, The Baltimore and Ohio Railroad Company and Samuel I. Stephens. Under our holding heretofore expressed in this opinion that plaintiff's decedent, as a matter of law, was guilty of contributory negligence, both instructions should have been given.
Defendants' instruction No. 5, dealing with the burden of proof and preponderance of the evidence rule is well covered by defendants' instruction No. 4. Defendants' instruction No. 6 was properly *154 refused, because the use of the words "the sole proximate cause of the accident" precludes the jury from finding for the defendants, though the collision may have resulted proximately from the concurrent negligence of defendant railroad company and plaintiff's witness Ward. Defendants' instruction No. 9, as originally offered, contains the same vice as instruction No. 6, as does defendants' instruction No. 9, as amended and given by the court. Defendants' instruction No. 11, dealing with the alleged contributory negligence of plaintiff's decedent is covered by defendants' instruction No. 12. We perceive no error in the refusal of the trial court to give defendants' original instruction No. 13, and the giving of defendants' instruction No. 13, as amended by the trial court. The amended instruction is simply more complete than the original instruction. The court merely inserted after the words in the original instruction: "that its occupants as reasonable and prudent persons could or should have seen and heard the approaching train", the words: "in time to warn the driver of the car of the danger to stop & avoid the danger." And, finally, instruction No. 15 was properly refused because it imputes Ward's negligence to plaintiff's decedent, and because by the use of the words "sole negligence" precludes recovery, if Ward and the defendant railroad company were concurrently guilty of negligence which resulted in the collision.
The foregoing disposes of all pertinent questions raised by counsel on the instant record; and for the reasons hereinbefore set forth, we reverse the judgment of the Circuit Court of Wayne County, set aside the verdict, and award defendants a new trial.
Judgment reversed; verdict set aside; new trial awarded.
LOVINS, Judge (dissenting in part).
I concur in the reversal of the judgment in this case, but I do not agree with the third point of the syllabus nor that part of the opinion supporting the same.
The record discloses that the decedent looked in the direction from which the train came while the view was obstructed by the fence built along the property of the American Car and Foundry Company. From that circumstance the majority opinion concludes that the decedent did not look again for the approaching train. I am not willing to agree that we can find that the decedent was contributorily negligent when there is no proof showing that he did not thereafter effectively look for the approaching train. Contributory negligence is an affirmative defense and must be established by evidence. Carrico v. West Virginia C. & P. Ry. Co., 35 W.Va. 389, 14 S.E. 12; Berns v. Gaston Gas Coal Co., 27 W.Va. 285; Johnson v. Baltimore & O. Railroad Co., 25 W.Va. 570, 577; Washington v. Baltimore & O. R. R. Co., 17 W.Va. 190; Sheff v. City of Huntington, 16 W.Va. 307. I think that the defense of contributory negligence is not established by proof. The facts shown herein are such that reasonable men may differ as to whether the defendant was guilty of contributory negligence. Before negligence, primary or contributory, exists as a matter of law, the facts must be such that reasonable men cannot differ. Wood v. Shrewsbury, 117 W.Va. 569, 573, 186 S.E. 294; Linville v. Chesapeake & O. Railway Co., 115 W.Va. 610, 177 S.E. 538; Morrison v. Roush, 110 W.Va. 398, 158 S.E. 514.
In the absence of proof to the contrary, it is to be presumed that the decedent took the necessary measures for his own safety and to protect himself from fatal accident. See Barker v. Ohio River Railroad Co., 51 W.Va. 423, 41 S.E. 148; Arrowood v. Norfolk & W. Railway Co., 127 W.Va. 310, 315, 32 S.E.2d 634.
There is no proof that decedent did not look more than once, and effectively a second time, for the approaching train. The defense of contributory negligence is unsupported.
The facts being such that reasonable men may differ, and there being an absence of proof that the decedent did not effectively look for the approaching train, I would hold that he was not guilty of contributory negligence as a matter of law.